# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL D. MASEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-660 CAS |
| | ) | |
| ANTONINA CHASTAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Antonina Chastain's ("Chastain") motion for summary judgment. Defendant Chastain moves for summary judgment based on the merits and qualified immunity. Plaintiff Michael Masek ("Masek"), who is proceeding pro se, opposes the motion, which is fully briefed and ready for decision. For the following reasons, the Court will grant defendant Chastain's motion for summary judgment.

## I. Background

Plaintiff Michael Masek is a civil detainee at the Southeast Missouri Mental Health Center ("SMMHC") in Farmington, Missouri. Until approximately July 20, 2016, Masek was confined in the St. Louis Psychiatric Rehabilitation Center ("SLPRC"). In his Complaint, which was signed but not verified, Masek brought a number of claims against five defendants pursuant to 42 U.S.C. § 1983, seeking monetary relief for alleged violations of his rights under the First and Fourteenth Amendments to the U.S. Constitution. In a Memorandum and Order dated March 7, 2017, the Court conducted a review under 28 U.S.C. § 1915(e) and found that Masek

had stated claims under the First and Fourteenth Amendments against defendant Antonina Chastain in her individual capacity for the denial of telephone calls and religious materials.[1]

Subsequent to the Court's March 7, 2017 Memorandum and Order, Masek filed multiple supplements and letters with the Court in an attempt to add additional claims. See Docs. 13, 14, 17 and 18. In a Memorandum and Order dated April 13, 2017, the Court wrote that it does not permit amendment of pleadings by interlineation or in a piecemeal fashion, and it would disregard Masek's attempts to supplement his complaint. The Court ordered that if plaintiff wished to add additional claims, he must file an amended complaint within 30 days of the Memorandum and Order. Doc. 19 at 2. The Court explicitly warned that in the event Masek failed to file an amended complaint, "this case will proceed on the original complaint against defendant Antonina Chastain for denial of telephone calls and of religious materials under the First and Fourteenth Amendments." Id. at 3. Masek did not file an amended complaint and, therefore, no other claims are at issue in this case.

After conducting discovery, Chastain now moves for summary judgment on a number of grounds. As to plaintiff's claims regarding telephone restrictions, Chastain argues the undisputed facts establish that she was not personally involved with issuing the order restricting Masek's telephone calls. In the alternative, she also argues that there were therapeutic reasons justifying the restrictions; Masek was never restricted from communicating with his patient advocate or his attorney; and he had alternative means of communicating with other persons. As for plaintiff's claims regarding the denial of religious materials, Chastain argues that Masek was

---

[1] On review pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismissed all of Masek's claims except for his claims against Antonina Chastain for the denial of telephone calls and religious material. The Court dismissed without prejudice the following defendants: Blake Schneider, Lisa Ellis, Felix T. Vincenz, and Praveen Nimmagadda. Doc. 8.

deprived of a copy of the Bible for only one week after he asked for one, and that such deprivation was de minimis and did not amount to a substantial burden on Masek's ability to practice his religion. Finally, Chastain argues she is entitled to qualified immunity.

## II. Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### III. Facts

Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party

E.D. Mo. L.R. 4.01(E).

In support of her motion for summary judgment, Chastain submitted a Statement of Uncontroverted Material Facts and a Supplemental Statement of Uncontroverted Materials Facts with citations to affidavits from Blake Schneider and Antonina Chastain, Masek's deposition transcript, and exhibits. Docs. 28 and 35. Contrary to the Local Rules, Masek did not file a statement of material facts as to which he contends a genuine dispute exists. In his memoranda, Masek does raise objections to a number of defendant's undisputed facts, but the vast majority of

his objections fail to provide specific references to any portion of the record.[2] Any objections Masek has raised that do not cite to the record are ineffective for purposes of establishing a genuine factual dispute.[3] Accordingly, for purposes of this motion, Masek is deemed to have admitted all facts contained in Chastain's Statement of Uncontroverted Material Facts and Supplemental Statement of Uncontroverted Facts that he has not disputed by means of citing to the record. See Roe v. St. Louis Univ., 746 F.3d 874, 881 (8th Cir. 2014) (if the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), "a district court will not abuse its discretion by admitting the movant's facts."); Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E.D. Mo. Local Rule 4.01(E)). The Court will address below the few instances where Masek makes objections to defendant's version of the facts and references the record.

With this in mind, the Court accepts the following facts as true for purposes of resolving Chastain's motion for summary judgment:

Plaintiff was found not guilty by reason of insanity for the murder of his father by a Jefferson County, Missouri court in 1990. Since that time, Masek has been in the custody of the

---

[2]Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment and a "Reply Memorandum to Defendants [sic] New Discloser [sic] of Supplemental Statement of Uncontroverted Material Facts." Docs. 32 and 36.

[3]Plaintiff does make some factual assertions in his memoranda that appear to be based on personal knowledge, however, neither of Masek's memoranda were verified or signed under penalty of perjury and, thus, cannot be considered as an affidavit in opposition to the motion for summary judgment. Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008) ("To establish a genuine factual issue, a party 'may not merely point to unsupported self-serving allegations.'") (internal quotation and citation omitted). Assertions in legal memoranda are not evidence. Id.

Missouri Department of Mental Health. Masek is currently civilly detained in the SMMHC in Farmington, Missouri. He was formerly detained at SLPRC.

While Masek was detained at SLPRC, he had a treatment team that included Antonina Chastain, a licensed social worker. Masek's treatment team met weekly to discuss his behavior and treatment. They also had daily morning meetings to discuss any problems that may have occurred overnight. As a member of Masek's treatment team, Chastain drafted monthly progress notes relating to his behavior and treatment. SLPRC staff drafted daily progress notes regarding Masek's status and wellbeing, which Chastain reviewed regularly. Prior to June 16, 2016, Masek was assigned to Cottage B at SLPRC.

On June 16, 2016, SLPRC staff notified Blake Schneider, a member of plaintiff's team and program director of the SLPRC New Outlook Program, that a female patient, "Lisa B.," had accused Masek of having a camera that contained explicit images of her. Lisa B. also stated that Masek had made a sex toy to use and gave her small plastic bags filled with his semen to impregnate herself.[4] In response to these accusations, Schneider and two other staff members escorted Masek to Ward E and searched him. The staff found two MP3 players. One of the MP3

---

[4]Masek disputes this fact by stating that, "#16 Is (not) a Uncontroverted Material Fact. It contains hearsay information that was never proven and is irrelevant to this case." Doc. 32 at 12. Masek does not cite to any portion of the record to support his assertion. The statement is not hearsay pursuant to Federal Rule of Evidence 801, because it is not being offered for the truth of the matter asserted. The statement is not being offered to prove that Masek "made a sex toy to use and had given [Lisa] small plastic bags filled with his semen with which to impregnate herself," but rather it is offered to show the effect that the statement had on decisions by staff members of SLPRC. Masek's objection is insufficient to establish a genuine issue of fact. "To establish a genuine factual issue, a party may not merely point to unsupported self-serving allegations. Instead, the party must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor." Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910, 915 (8th Cir. 2013) (internal quotation and citation omitted).

players had a camera that contained eleven blurry pictures of what appeared to be skin and a video of what appeared to be a female touching her own breast and nipple.

At the time, Dr. Davinder Hayreh was the staff psychiatrist for patients on Ward E. Schneider informed Dr. Hayreh of the accusations against Masek. After discussing the possible detrimental effect that future contact with Masek could have on Lisa B.'s treatment, Dr. Hayreh issued an order restricting Masek's telephone use and continued him on sleepover status on Ward E.[5] Dr. Hayreh restricted Masek's calls to his Missouri Protection and Advocacy representative and his attorney. It is SLPRC's policy that only psychiatrists can issue an order restricting a patient's communications. At all times while he was on telephone restriction, Masek was permitted to call his Missouri Protection and Advocacy representative.[6] The day after Masek was transferred to Ward E he called his representative. Masek spoke with his representative a couple of times while on Ward E. Masek did not attempt to call his attorney.

Shortly after plaintiff was moved to Ward E, Schneider and a nurse searched Masek's room in Cottage B and found a large amount of contraband, including two mass storage devices and numerous other electronic devices. There was also a large amount of written materials,

---

[5]Sleepover status refers to a client from one treatment program being put on a ward of another treatment program.

[6]Plaintiff attempted to dispute this fact and wrote, "Plaintiff was not allowed to make or receive any calls for the first 3 days. The phone restriction was not in compliance with policy or progress note." Doc. 32 at 13. Although Masek references SLPRC's Policy for limiting patient communications and a progress note, these exhibits do not controvert defendant Chastain's Statements of Uncontroverted Material Fact. Both the policy and the progress notes support defendant Chastain's Statements of Uncontroverted Material Fact that plaintiff Masek's phone calls were restricted pursuant to SLPRC policy. Additionally, plaintiff Masek himself confirmed during his deposition that he was permitted to call, and did in fact call, his Missouri Protection Advocacy representative. Doc. 28-1 at 65:3-66:6.

including books and printouts, including a copy of the Bible in which there were handwritten, delusional notes. Having no place to store the large amount of contraband, Masek's room was locked so that no one could enter and property could be inventoried and examined. All the property remained locked in Masek's former room, since there was insufficient space to store it elsewhere at SLPRC. Masek was allowed to have a few changes of clothing but no other property from his room in Cottage B.

Chastain was on vacation during the week that included June 16, 2016. She returned from vacation on June 20, 2016. Upon her return, Schneider informed Chastain that Masek had been moved to Ward E and explained the events that precipitated the move, including the contraband locked in Cottage B. Chastain spoke with Masek, and he initially denied exchanging any pictures with Lisa B, but he later admitted it was true.

Chastain spoke with Masek again on June 23, 2016. Masek testified in his deposition that he recalls asking Chastain for his personal Bibles and tea from his prior room during their June 23, 2016 conversation.[7] Plaintiff only requested his personal Bibles, no other copies. Had Masek requested it, he could have received a copy of the Bible from another source. Approximately one week after their conversation, another patient obtained a Bible for Masek from the librarian. Plaintiff did not like the version of the Bible that was initially given to him.

---

[7]In her affidavit attached to the Memorandum in Support of the Motion for Summary Judgment, Chastain stated that Masek did not request a Bible from his prior room during this meeting. During his deposition, Masek repeatedly stated that he asked Chastain for his Bibles. Doc. 28-1 at 34:5-32; 47:20-48:8. In viewing the facts in the light most favorable to the non-moving party, the Court accepts as true Masek's allegation that he requested his personal Bibles from Chastain during the June 23, 2016 conversation. See Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 844 (8th Cir. 2015) ("The nonmoving party receives the benefit of all reasonable inferences supported by the evidence").

The other patient went back to the librarian and asked for a different version of the Bible, which was given to plaintiff. Plaintiff describes himself as Christian with no denomination.

Despite his telephone restrictions, Masek admitted he did have phone contact with Lisa B. while he was on phone restriction on Ward E. Due to the disruptive impact that Masek's relationship had on Lisa B.'s treatment, Masek's treatment team thought it best to move Masek to SMMHC. Plaintiff was transferred to SMMHC on July 20, 2016.

## IV. Discussion

### A. Telephone Restrictions

Defendant Chastain argues that Masek's claims based on the denial of telephone calls in violation of the First and Fourteenth Amendments fail because Chastain was not personally involved in the telephone restriction order and Masek, therefore, cannot establish that Chastain deprived him of a Constitutional right as required by 42 U.S.C. § 1983. Masek has alleged that Chastain denied him access to make and receive telephone calls in violation of his First and Fourteenth Amendment rights while confined at SLPRC from June 16, 2016, until his transfer to SMMHC on July 20, 2016. The Court finds that the undisputed evidence shows that Chastain was not personally responsible for the telephone restrictions placed on Masek.

"Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 477 (8th Cir. 2002) (quoting 42 U.S.C. § 1983). The plaintiff in a § 1983 action must show that a defendant deprived him of a constitutional right while acting under color of state law. "Liability under section 1983 requires a causal link to, and direct responsibility for, the

9

deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (citations omitted). "A defendant will not be held liable under 43 U.S.C. § 1983 unless he was personally involved in causing the deprivation of a constitutional right." Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir. 1978).

Here, there is no evidence from which a reasonable jury could conclude that Chastain was directly responsible for the deprivation of Masek's constitutional rights with regard to telephone calls. It is undisputed that Dr. Hayreh, not Chastain, restricted Masek's telephone calls. This is confirmed by the sworn affidavits of Chastain and Schneider, and further corroborated by the progress note dated June 16, 2016. Masek has not referenced any part of the record that raises a question of fact as to whether Chastain was involved, in any way, in the restriction of his calls.[8] Not only was Chastain on vacation while Dr. Hayreh issued the order restricting Masek's telephone calls, but it is SLPRC policy that only psychiatrists can issue an order limiting or restricting a patient's communications. As part of Masek's treatment team, Chastain was a licensed clinical social worker, not a psychiatrist. Masek does not dispute that it is SLPRC's policy that only psychiatrists can issue limitations or restrictions on patient communications, and he has failed to provide any evidence that SLPRC social workers are

---

[8] With respect to Defendant Chastain's argument that she was not personally involved with the decisions restricting Masek's telephone calls, Masek only restates his allegation in his unverified complaint that "Defendant personally told plaintiff NO when he asked to call his sister." Doc. 32 at 3. The party opposing a summary judgment motion may not rest upon the allegations in their pleadings. Fed. R. Civ. P. 56(c); Herring, 207 F. 3d at 1029. "In order to survive a motion for summary judgment, the nonmoving party has the burden of setting forth specific facts to show a genuine issue for trial, and '[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions will not suffice.'" Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (internal punctuation and citation omitted). Masek has not submitted any evidence supporting this bare allegation, and the Court finds that this unsupported statement is insufficient to prevent summary judgment.

permitted to issue an order restricting a patient's communications. Because there is no evidence in the record that Chastain was directly responsible for the deprivation of Masek's constitutional rights with regard to telephone calls, Masek has no basis for liability against Chastain. Mark v. Nix, 983 F.2d 138, 140 (8th Cir. 1993) (citing Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam); Ronnei v. Butler, 597 F.2d 564, 566 (8th Cir. 1979) (per curiam)).

The Court concludes that there is no material question of fact regarding defendant Chastain's personal involvement in the restriction of plaintiff Masek's telephone calls. Because defendant Chastain cannot be held liable under §1983 if she was not personally involved with the alleged deprivation of plaintiff Masek's constitutional rights, the Court will grant defendant Chastain's summary judgment motion on this claim.[9]

### B.  Free Exercise of Religion

The Court now addresses defendant Chastain's motion for summary judgment on Masek's claim that he was denied religious materials in violation of the Free Exercise Clause of the First Amendment. Chastain argues that there was no interference with plaintiff's ability to exercise his religion because had plaintiff requested a Bible, instead of specifically requesting his personal Bibles, he would have received one. Defendant Chastain also argues that any interference with Masek's religious practice was de minimis, in that Masek was only without a Bible for one week after he requested his personal Bibles.

---

[9]The Court declines to reach the issue of whether or not the telephone restrictions placed on Masek violated his rights under the First and/or Fourteenth Amendments. Addressing the merits of Masek's claim would result in an advisory opinion because "nothing we might say would affect the rights of the parties in this case." South Dakota v. Hazen, 914 F.2d 147, 150 (8th Cir. 1990). The Court of Appeals for the Eighth Circuit has warned against issuing opinions in situations such as this. Id.

To establish a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action substantially burdened his exercise of that belief. Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989). See also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008) (citing Weir v. Nix, 114 F.3d 817, 820 (1997) (as a threshold matter, courts must inquire whether the limitation placed a substantial burden on the plaintiff's ability to exercise his religion).[10]  Substantially burdening one's free exercise of religion means that the limitation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities in those activities that are fundamental to a person's religion.

Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004).  If the challenged governmental action substantially burdened a sincerely held religious belief, the Court is to apply the factors outlined in Turner v. Safley, 482 U.S. 78, 89 (1987), "to determine if the

---

[10]For purposes of considering the First Amendment rights of civilly committed patients, the Court finds the status of such persons is substantially similar to that of prisoners, and therefore the Court may look to case law interpreting prisoners' rights in considering the constitutional issues raised by Masek in his complaint. See Beaulieu v. Ludeman, 690 F.3d 1017, 1039 (8th Cir. 2012) (applying standard from a case in a prison context to First Amendment claims brought by civilly committed sex offenders).  See also Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner."); Serna v. Goodno, 567 F.3d 944, 953 (8th Cir. 2009) (finding that "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison" because "[a]dministrators have a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety" ); but see Senty–Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (noting the liberty interests of civilly committed individuals in state custody as dangerous persons "are considerably less than those held by members of free society," but they are "entitled to more considerate treatment and conditions of confinement" than prison inmates).

regulation restricting the religious practice is reasonably related to legitimate penological objectives."[11] Gladson v. Iowa Dept. of Corr., 551 F.3d 825, 831 (8th Cir. 2009).

Here, it is undisputed that Masek's personal Bibles were locked in his room after contraband was discovered, but there is no evidence that Chastain precluded Masek from having a Bible. Defendant Chastain put forth evidence, which plaintiff does not dispute, that had plaintiff requested a copy of the Bible, he would have received a copy. Plaintiff, however, did not request that Chastain provide him with a copy of the Bible, but rather he testified that he asked for personal Bibles, which were locked with other contraband in his room. There is no evidence from which a jury could conclude that Chastain precluded plaintiff from obtaining a Bible and, therefore, the Court concludes that defendant Chastain did not place a substantial burden on plaintiff's ability to practice his religion. See Moon v. Jordan, No. 1:15-CV-167 RLW, 2017 WL 5466681, at *2 (E.D. Mo. Nov. 13, 2017) (granting summary judgment in favor of defendant where the jail did not preclude plaintiff from possessing a Qur'an. The jail did not maintain a copy of the Qur'an but the plaintiff "could have had someone bring him a copy."); Amos v. Karol, No. 1:14–CV–63 SNLJ, 2016 WL 492707, at *3 (E.D. Mo. Feb. 9, 2016) (granting summary judgment in favor of defendant where plaintiff failed to show that his

---

[11]The Turner factors are:

 (1) whether there is a "valid rational connection" between the prison regulation and the government interest in justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have a "significant" "ripple effect" "on the guards, other inmates, and prison resources"; and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests."

Gladson, 551 F.3d at 831 (quoting Turner, 482 U.S. at 89-91).

requests for a prayer rug, Qur'an, and access to an Imam were denied; plaintiff was instructed as to how to receive these items and access to a Imam, but they were not pursued).

But even if the Court were to find that Chastain prevented plaintiff from having a copy of the Bible, it is undisputed that approximately one week after the conversation in which he asked Chastain for his personal Bibles, another patient brought plaintiff a copy of the Bible from the librarian.[12] Plaintiff has failed to show how not having a Bible for one week after he requested one substantially burdened his ability to exercise his religion. Plaintiff maintains that he is a non-denominational Christian. Plaintiff has offered no evidence to show that not having a Bible for a week meaningfully curtailed his ability to practice his non-denominational Christian faith.[13] The Eighth Circuit has found that the temporary deprivation of religious material does not rise to the level of a constitutional violation. McCroy v. Douglas Cty. Corr. Ctr., 394 F. App'x 325, 326 (8th Cir. 2010) (concluding that the initial confiscation of a prisoner's towel he used as a prayer rug and his copy of the Koran and the two-week delay in returning them to him did not evidence a substantial burden on the ability to practice one's religion); see also Johnson v. Fields, No. 2:14-CV-38-FDW, 2017 WL 5505991, at *13 (W.D.N.C. Nov. 16, 2017) (finding the removal of

---

[12]Plaintiff testified that he did not like the version of the Bible that was initially given to him. The other patient went back to the librarian and asked for a different version, which was given to plaintiff. There is no evidence in the record that the second Bible was somehow deficient or inadequate.

[13]Plaintiff states in his memorandum in opposition that the Bibles he received from the library were not equivalent to his personal Bibles, namely because they were not Septuagint Bibles. First, plaintiff merely makes this assertion, and there is no evidence of these facts in the record. Morris, 512 F.3d at 1018. Second, plaintiff does not explain how not having a Septuagint Bible significantly constrains his ability to exercise his non-denominational Christian faith. And finally, plaintiff does not state whether he asked for a copy of the Septuagint Bible, and whether that request was or would have been denied.

the Bible for 24 days did not substantially burden the plaintiff's exercise of his religion). The Court finds that the temporary deprivation of a Bible for a week is de minimis and does not amount to a constitutional violation.

The Court concludes that defendant Chastain is entitled to summary judgment with regard to plaintiff's claim that he was denied religious materials in violation of the Free Exercise Clause of the First Amendment. There is no evidence that Chastain precluded plaintiff from having a copy of the Bible, and plaintiff was only without a copy of the Bible one week after he asked for his personal Bibles, which was de minimus. Masek has failed to raise a genuine question of material fact as to whether defendant Chastain placed a substantial burden on his ability to practice his religion.

## V. Conclusion

For the foregoing reasons, the Court concludes that plaintiff Masek has failed to establish the existence of any question of material fact with respect to his claims for denial of telephone calls and of religious materials under the First and Fourteenth Amendments, and that defendant Chastain's motion for summary judgment should be granted on the merits. As a result, the Court does not reach Chastain's argument that she is entitled to summary judgment based on qualified immunity. Accordingly,

**IT IS HEREBY ORDERED** that defendant Antonina Chastain's Motion for Summary Judgment is **GRANTED.** [Doc. 26].

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  30th   day of August, 2018.